The second case on our docket this morning is 23-30053 United States v. Chiasson Your Honor, may it please the court. I represent Mr. Chiasson, Taylor Chiasson, in this matter. He is currently serving a 96-month sentence, which is an upward variant sentence for being a felon in possession. It was a significant upward variance of more than two years than the high end of the guidelines. And this is an unusual case. It's unusual because of that significant variance, but it's also unusual because the almost unheard of, not just unusual, two neighbors of Mr. Chiasson were allowed to testify. And that makes this a very unusual case. And when you have that upward variance and two neighbors testifying as victims and talking about bare arrest records, when those combined and the judge relied on those two things to give that upward variance sentence, that is where error occurred. Well, where in Rule 32 does it preclude testimony from witnesses who have some view about what life on the street was like with Mr. Chiasson? I don't believe Rule 32 precludes that, Your Honor. Oh, I thought your argument was that it violated Rule 32 to bring in the witnesses. We argued that they were not victims, so it violated Rule 32 to treat them as victims and then in response to the... Right, but Rule 32 says you must allow certain testimony. Right. But it doesn't preclude this testimony. Right. It doesn't preclude testimony. However, if you look at how these two witnesses came to be on the witness stand, they were presented as victims. The government came forward after this sentencing was long as a run-of-the-mill felon in possession case. The government came forward and said, you know, Your Honor, at this point, pre-sentence report doesn't say anything about upward variance. Defense is asking for a downward variance. Government didn't even file a sentencing memo and then they come in and say, Your Honor, I have these two witnesses who, you know, and traditionally under 922G, this is a society crime. Traditionally, we don't have victims, but, and he says, but I want to call two witnesses who were meant to be protected by this statute. And the defendant counsel objects and the court says, hey, I want to hear both sides. And that implies like a, you know, adversarial, you know, both sides. So the objection was based on Rule 32? The original objection was based on Rule 32. And not on the, were the words, I mean, bear arrest records ever spoken in the objection or was it just a Rule 32 doesn't allow this? The original objection was based on Rule 32. However, when the, when, when, once the witness testified, the judge returns to the objection, which shows that it's an ongoing objection. He's continuing to entertain and he's acknowledging that it's not just a Rule 32 objection based on status. It's also an objection based on the substance of the testimony. And that's when the judge says, you know, I want to return a defense counsel to your objection because I'm allowed to consider criminal history. And what this testimony is, is it expounds on. And so the district court understood these weren't victims in the same sense of a burglary and you're the one who lost your stuff. So the district court understood that. And in fact, I thought the, the two witnesses were asked, you know, are you the victims? And they basically said, no. One said, no. The other one said that he did feel like he was a victim, but he felt like he was, but I mean, you can sort of feel like you're a victim and not technically be one. And the district court didn't misunderstand that. And think that this crime, you know, this was a burglary of this guy. Doesn't think it's that kind of victim. Correct. Your honor. That wasn't in, I don't maintain that they were victims either. My, our argument is they were treated as victims. They initially were allowed to testify. They were presented as victims by the government. They're allowed to testify. And then the judge comes in later and says, you know, I know you, you're objecting, but I'm allowed to listen to this criminal history and this expounds on the PSR. That's the word the district court used. This expounds on the criminal history and the PSR. Well, it didn't, it didn't expound, but the district court doesn't proceed them as the victims under rule 32. That's what I'm saying. The district court that are required to be allowed to testify. So why can't the district court, I mean, they have a very broad arena on what they can consider. Why can't they consider, you know, he's saying, well, this was just an accident. I shouldn't have had this gun. Oh, la la la. And then they're kind of saying, no, I mean, it's a lot more than that. And why isn't that relevant? Well, I do believe that they can have lay witness testimony at a sentencing. However, in this case, these their testimony was based on their bear arrest record search. They went and did their own search and found the bear arrests of Mr. Chasson. Well, I mean, that's a different argument. That is an argument that the substance of their testimony referred to what you're calling bear arrest records. And I know that that term is in our cases, you know, refers to just a record of arrest. It has no elaboration. We don't know anything about it. And the, the Constitution, I believe, forbids considering that in a sentencing. But in this case, looking at the record, there are some arrests here that might fall under that category. But there are lots of other arrests that do have elaboration in the PSR. So how am I supposed to know that the district court was only referring to or the witnesses were only referring to the bear arrests? How many PSR are documented for the district judge? Well, for the witnesses, they testified that it was Google. They searched Google. One witness said that. And they didn't have the precedence report. That's a sealed document. They didn't have access to it. Yes, but the district court is listening to that testimony. And he may, he may rely on some of it. He may not rely on others. He had a PSR that had quite a lot of documentation about prior arrests. So how are we supposed to know that the district court relied in a reversible way on bear arrest records? Because in our return to the sentiment that these were presented as victims, I am not claiming that they're victims, that the government has conceded they're not victims. They weren't notified as victims. But when they were presented as people who this, the reason they get to testify is because they're people who are, this statute was meant to protect. So they get up there to testify and they are angry and emotional and it's all driven by their research into this man's background. Well, is that fair? They were, they were neighbors, right? Yes. Okay. So they were, they were also testifying to what they saw, what they experienced, right? Yes. Okay. In part. It wasn't only that we searched, we Google searched this guy. No, it was not. No, I know that's correct, John. It was also things that had happened in the neighborhood, but it was, a lot of that was a primary argument by both of these, these gentlemen was that the Sheriff's office was called, called a lot to the, to the neighborhood. Well, that just implies criminal behavior. They even, the, one of the witnesses even acknowledged that the defendant wasn't even there sometimes when the Sheriff's office was called. So it's, it's like this, it's this odd case of two witnesses coming in and coming in with their research that is limited to bear arrest records because they don't come in and talk about facts and certain. Well, can a district court, um, I assume a district court can consider evidence at a sentencing hearing that would otherwise be inadmissible. Yes. It has to be reliable. There has to be reliability. And that is where a bear arrest record is not reliable. If you could point out to me in the record, what's your, what are your best sort of record citations for where the district court is saying, yep, that, that arrest there, that's, that's factoring into my decision, um, and, and it's a bear arrest record. We don't, we don't know a thing about the arrest. The, the main one would be, uh, when he, when the judge was imposing sentence, and I don't have the exact page number. Um, it was, well, he's imposing sentence on page 100. Yes, I do have that. Okay. Um, and he's saying, you know, he's arrested, he's arrested, he's arrested time and time again, he's been arrested. And he says, I see dismissed possession of a controlled substance dismissed. If you look through the pre-sentence report and on page record dot record, um, on appeal 204, and that's paragraph 62 of the pre-sentence report, that's the only time that Mr. Chasson was arrested for possession of a controlled substance that was dismissed. It's the only time fits the words by the judge. Okay. And that was a bear arrest. Okay. So possession of controlled substances, and we can, so, so that, that's why, are there any more? The other, there, there, with the judge, he listed also felon in possession, and Mr. Chasson had been arrested four times for felon in possession. One was this offense. The other, two of them were on the same date. One had some information. And then, The AR-15? The AR-15, yes, Your Honor. And then finally, there was one that was a bear arrest. So when the judge is saying he's been arrested for felon in possession time and time again, he's clearly talking about also, he's including these times where there are bear arrests. It's not just where he's, he's, uh, because he's only been arrested once with the information available in the pre-sentence report. So I do believe those two passages are, are indicative of where the judge was his reasoning for these, this upward variance. And what do you think the, um, what, did, did you preserve this issue by objecting on this basis? So, That matters, obviously. Yes, Your Honor, it does. And so, um, I do believe it was preserved, and that is this we've maintained throughout. And the way it's been, was preserved, I go back to where the district judge, after the first witness testifies, comes back to the defendant's objection and says, you know, you have, um, you've raised this objection, but I'm entitled to consider this criminal history. And this is expounding on the PSR. So I'm entitled to consider it. But I, but you're talking about what the judge said. What, what did the, what, what was the basis of the objection? I believe that acknowledges that the judge was on notice that the objection was not merely to them, the testimony as to their status as witnesses, but also to the, to the substance of that. I don't see that at all. He's just saying, I have an additional reason for admitting it, an alternative basis for admitting it, not that you'd object, that someone's objected on that basis. The, I believe it just, it shows that he was on notice that there was an objection to the at the end says your objection is noted for the record. It clearly in the case. How does he know it's a bear arrest objection as opposed to just, you shouldn't listen to these people because they ain't the victims. Because he's, he ties it back to the criminal history in them expounding on the PSR. And that is where the bear arrest record is, is, and their testimony, the one who had just testified, testified about bear arrest. Y'all didn't say, and he didn't say bear arrest or talk about that we can hear from neighbors about how this guy continues to be a criminal. But, so there was no, the defense, which was y'all's objection. I mean, y'all's objection was these folks don't know anything about this particular crime. Correct. But the judge understood and was on notice because they, the, when he's talking about it, expounding on the PSR and immediately after a witness lists bear arrest, no facts, he doesn't say these witnesses aren't saying that we know we see him. He's continuing to, you know, whatever, whatever kind of crime I see him running into people's houses or anything like that. They're just saying, I looked and he has all these, he's at rest. That's the same thing as a judge. A judge couldn't let the PSR, the probation officer come up and just say, yeah, I did this research and this is, this is the bear arrest. It's the same thing that they just, it's not their firsthand knowledge of these crimes. It's their firsthand. Sure. Their firsthand knowledge of the police being called to the house, but that's not why we don't know why. And so. So your best argument is that the district court statement shows that you made an objection you didn't make. My best argument was that, that he was on notice that there was that this objection was broader than just the status and how on when my time, I have a few more seconds and also on, even if we didn't preserve it, I'm maintaining that on plane error. We, we succeed. This was clear and obvious bear arrests was very clear. His, his rights were clearly, you know, violated in the sense of he, he was sentenced substantially higher than his guidelines, more than two years higher than his guideline, high end of his guidelines that he had, um, he was 30 something years old at the time. And how many convictions he had, um, he had his convictions. I don't have the number of his convictions off hand, but he, he had a number, they stip, there were five stipulated to, and then a number of prior convictions that were in the PSR, a number it's admittedly a lengthy criminal history. Thank you. Hmm. May it please the court, Forrest Phillips for the United States. Uh, the district court did not err in its sentencing procedures. In this case, did not err, uh, in allowing these victims to testify because rule 32 of the rules of criminal procedure did not prohibit this sort of test. Is it an unusual procedure that the district court engaged in here? I don't, I really don't know. Is it, if it's an unusual procedure, which I'm not so sure it is, it's certainly justified in this case to explain, uh, the, um, appellate counsel is correct that these witnesses became involved once appellate counsel, you know, filed a, or excuse me, defense counsel filed a sentencing memorandum asking for this substantial downward variance from the low end of the guidelines was 57 months all the way down to 30 months and cast Mr. Chazon's, um, conduct in the community as an important reason for that downward variance. This is a man getting back on his feet. He's but look what he's done. He's moved in with his ailing father, caring for him. He's trying to repair other people's homes in the community. At that point, you can't let that rosy picture go uncontested. Uh, it makes perfect sense to have a couple of his actual neighbors come in and say, let me tell you what's really happening in this neighborhood. So this testimony is not 32. It goes to core 35 53. It's just not required. And I mean, the reality is I am certainly aware of just defendants bringing in like their mother to talk about them. And the judge lets that mother talk. And the mother wasn't there for the crime that she's there to say, oh, my son would never do this again. Oh, I'm so sorry. Oh, la la la. And try to, you know, advocate for him, even though she's not aware of what happened in that crime. That is not totally uncommon. It has happened. Absolutely right. You all don't come in and object to that on appeal. Correct. Argue that on appeal. We cite several, um, uh, sources of law in our brief, eight statutory 18 U. S. C. 36 61. The Supreme Court decision in Roberts versus United States that, you know, the information this report considers largely unlimited is the language you're going to see in Roberts. There are very few things that limited. We're talking about core constitutional issues that limited. I mean, equal protection issues, due process issues. Those are to play here. And, you know, to be clear, the district court had said, No, I'm not going to allow this testimony. I wouldn't have been area either. It's a it wouldn't have been able to exactly. It's a large field of discretion. What about the bear arrest? Because that's a very clear law that the district court cannot rely. That's one of the things the district court cannot rely. It is one of the few limitations. It is a bear arrest, like a more fulsome arrest. Yes, even though the conviction didn't occur, but a bear arrest, just Mr X was arrested for X Y Z. No, absolutely. So I want to start with what the correct standard review should be for that issue. That bear arrest issue. I think that the court kind of agrees that it is a plain air review. Uh, you know, the purpose of plain air review doctrines to put district court on notice about the nature of the air. And you never had that here. Even when the district court says after hearing some of this testimony, Oh, yeah, this is perfectly fine. You know, they're not up there talking about being victims. They're explaining this guy's criminal history, his conduct in the community. That would have been the time for defense counsel to say, Oh, but no, Your Honor, they can't consider, you know, bear arrest. So this objection was never made. We're under plain air here. And for that reason, it is the defendant's you know, a plain or obvious error, which you cannot do in this case because the vast majority of arrests in this case mentioned by the district court drug prior drug cases, prior cases involving carnal knowledge of a juvenile sexual misconduct with juvenile. Those are resulting in convictions, at least one. And the only type of offense mentioned by the district court that does result in the conviction is prior firearms offenses. And you still have facts about firearm offenses in the PSR. And you know, this court's caseload is clear that when you have that extra description alongside an arrest that does have an addition of reliability and then the burdens on the defendant, certainly under plain air review to come in and explain why those facts can't be reliable. Well, let's just talk about the law for a second on this topic. Let's suppose the PSR goes into some detail about a prior arrest that did not result in a conviction. The district court is within its, can make an express finding by preponderance of the evidence that an offense did actually occur, even though there was no conviction. Is that correct? Yes, yes, absolutely. So the PS, I'm sorry, go ahead. I was just going to, I think get to where you already are, your honor, just some information that there's an addition of reliability and make that fine. Right. And so the defendant can bring in any witnesses you want to, to undercut the PSR and say, no, there, you know, it was, it was just a bare arrest. I didn't commit it. I'm innocent. The, you know, whatever. So you can have a factual trial within the, at the sentencing hearing, basically as to prior arrest, it didn't result in conviction as to whether by preponderance of the evidence he committed the offense. Absolutely. And we just don't have that here, right? The PSR was adopted without any contesting by the defendant. Right. My point is either side can bring in witnesses to address that issue. Yes, your honor. Correct. Okay. Going back to these witnesses and the fact that they may mention arrest at some point, that's far from the core concerns of their testimony. You have the first witness, the across the street neighbor talking about criminal conduct that he witnessed personally. At one point he notices police conducting a raid where they're carrying large plants, marijuana plants out of Mr. Chazon's home. He testifies on page 84, 85 to having witnessed a domestic battery. He testifies to an occasion where police showed up. Mr. Chazon was not cooperative with them. So they drew their guns, basically resisting police commands with children in the area. I believe it's Mr. Bonetta, the second. I think Mr. Osborne testifies about some animal cruelty that a dog was found shackled in the garage of dead has been there for some time. These are all things they witnessed. You know, it's not, I got on Google. It's not that I pulled a police report. So if you have that stuff mentioned briefly, the fact of many arrests, all that's already in the PSR. And we really have no indication. The district court is basing its sentence on, uh, well, she mentioned, uh, a specific example in the record. Can you address that? Yes, your honor. Um, I can, by saying that, uh, Mr. Chazon has convictions for drug offenses and, uh, he does have a dismissal for a possession of a controlled substance. I believe it's marijuana. I think it's paragraph 58 of the PSR, but you're going to find some facts that go with that. And they're pretty salacious. Uh, Mr. Chazon was found, um, in a, uh, house with some juveniles, um, and, uh, some spent shotgun shells or excuse me, rifle casings. I think the police were called there because they heard gunshots. Again, you have past association with, uh, firearms. Um, and, uh, ultimately he was charged with some sort of, uh, drug offense, possession related to drugs, not on the property and some sort of, you know, nefarious association with juveniles based on the, the, the children at the party. He said that they were the ones shooting the guns. Now that those charges were dismissed, but those are facts that go beyond the mere fact of conviction. Uh, and, and more broadly, so we don't get lost in the weeds here. If you removed every single, you know, bear arrest from this PSR, from this record, what you have, uh, left as a sentencing, uh, basis still lines up perfectly with district court's rationale for the sentence it's selected. Uh, he's district court cites Mr. Chazon's frequent recidivism. He cites the need to, um, uh, foster deterrence and promote respect for the law when Mr. Chazon's previously never been seriously punished, um, for his prior offenses. Uh, and you know, all that still exists. If you remove every single bear arrest from the table here, you've got, I think it's 14 total convictions. Now, not all of those are felonies, but 14 total convictions, uh, from, uh, you know, around the age of 18 to his 33, that's his age when he's sentenced. Um, you've got no longer than eight months, uh, at any given time spent in custody or sentence given rather, uh, for these offenses. So he's never been seriously punished. Uh, and, uh, he's a recidivist, uh, if you just look at his convictions. So there's no way under the plain air standard for Mr. Chazon to show an effect on his substantial rights if you get that far. Because remember, it's his burden under plain air to show a reasonable probability that the error he's identified here, um, that claimed reliance on a bear arrest actually affected his sentence. I mean, if this went back to the district court, that basis is still very much there for the exact same sentence for the exact same reasons stated in the district court's, uh, uh, stated rationale. Uh, so, you know, I kind of want to sweep back and go through everything in quick order here. Uh, the Rule 32 issue, Rule 32 does nothing, uh, to, uh, prevent this sort of testimony. It merely specifies what parties a district court must give an opportunity to speak. You know, in contrast, the, uh, the law around what a district court may do at sentencing, it can consider information going to a defendant's background and characteristics from, uh, you know, virtually any source subject to sort of core constitutional restraints that just really aren't at play here. Uh, remember, this objection was just under Rule 32. As you said, Judge, it's one thing, they objected to these witnesses taking the stand because of a rule. They never objected to the substance of that testimony. Two very different things. It's like objecting to an expert as not being qualified unless I'm able to testify and then on appeal trying to find specific aspects of that testimony that you disagreed with. Uh, moving to the bear arrest record issue, as I stated, it's got to be under plain error. This objection was just never made. The district court never had an opportunity to confront it, um, uh, under the rationale we stated. You've got convictions for most of these arrests, that category of arrest anyway. The only one you don't, you've got facts that, uh, are explained in the, uh, PSR, uh, that were never contested. Uh, so they bear that additional reliability that allows the district court to use them. And even if you get to the very end of the plain error road, uh, not the very end, the last one we briefed, uh, substantial rights analysis, uh, it's clear that these bear arrests were not an issue in this case, not in the record, not a basis for a sentence. You're going to arrive at the same sentence because you still have everything that you need, uh, to say that Mr. Chazon is a recidivist. The question is that what we would arrive at is what the district court arrived at and why. So yes, yes, yes, judge. Uh, the defendant cannot show his sentence would be any different under that substantial rights analysis because the rationale articulated by district court is still very much there. The bear arrest record did not have a significant, uh, effect. Um, and with that, unless the court has any questions, uh, the United States arrest. Thank you, counsel. The government maintains that these witnesses were called to show what was really happening in this neighborhood and to explain the criminal history, which is also pretty much what the district court said about expounding on the criminal history. There were no additional facts given by these witnesses concerning what happened in any of, any of the arrests, much less the bear arrests. They don't, they don't come in and tell what happened and that's what would, if they had facts and circumstances, that would be reliable information. Just coming in to say there's a list of arrests. That's not reliable. Similarly, uh, with the plain error review, the defendant has been, uh, hit the, this district judge relied on not only bear arrests, but the testimony and the fervor of those witnesses. And he echoes a lot of the words that they use. These two witnesses came in and said, this has to stop. One of them actually said this, he keeps getting arrested. This has to stop. The state hasn't done anything. This has to stop. The other one says, you know, this is just a crazy thing that's happening. You know, this, he's never suffered any consequences. And the judge comes in and uses those words. He's never Well, that would be one thing if he didn't have 14 convictions. If this was his only conviction or only fence where he was actually prosecuted and they were coming in saying he's a bad neighbor, that would be one thing. But I need to see a link in the record where the judge was saying, I based it on something other than the 14 prior convictions that he did not serve much time for. Well, he says arrested multiple times in the government referenced a different paragraph that I was referencing with the bear arrest. It's paragraph 62 in the PSR is where it's the only time that he was arrested for possession of a controlled substance and it was dismissed. And that's specifically what the district court relied on. And that was a bear arrest. And that's still clear. And so with all of this, Mr. Chasson's due process rights were violated whenever this, it is an unusual situation where neighbors get to come in. It isn't unusual for mothers to come to testify. I understand that. Absolutely. We do it all. That's fine. I understand that. But and also considering it, hearing it, but then incorporating it into your ruling and over two year upward variance based on... Do you want the district court to consider what mama says? I do. I do want him to. It goes the other way. But you know, the neighbors are saying, oh my heck, mama is saying, oh no. And the district court has to, you know, make a reasonable decision. Yes. And I believe what the district courts do though, when they hear mom come in and the mom's not coming in to say, well, maybe some of them do, but the mom comes in and says, you know, this is, this, he's a good son. He, you know, when I, when, when I broke my leg, he was there to take care of me. You know, they give these specific examples of these, these men or women doing certain things. In this case, the examples were a list of arrests and a number of times that the sheriff's office is called out. And then there were some other things. Admittedly, it's not a blanket. I'm not asking for a blanket rule. This was the, so it's not just that they consider it, it's how he relied on it and incorporated it and used their words. And before these witnesses got on the stand, this was, there was no indication that anything was going to be out of the ordinary. This was a regular sentencing. They got on the stand and, you know, it is very different to read a letter and it's very different to see. But he was saying, and this was kind of a mistake and blah, blah, blah. So I mean, he's kind of acting like, oh my heck. And so that's why they were rebutting that notion. Well, I believe he accepted responsibility. He understood that, you know, he was guilty of the possession of the firearm. He was seeking a downward variance based on. Because of the, oh my heck. And based on his abuse as a child and his father's condition and his hitting hard times during the hurricanes, those sorts of things were the basis for his downward variance request. Thank you. The court will take a brief recess.